Margaret Paton-Walsh
State of Alaska, Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone (907)269-6612
Facsimile (907)258-4978
Margaret.paton-walsh@alaska.gov

Attorney for Lieutenant Governor
Craig Campbell and the State of Alaska,
Division of Elections

**IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| JOE MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LIEUTENANT GOVERNOR CRAIG ) | |
| CAMPBELL, in his official capacity; ) | |
| and the STATE OF ALASKA, ) | |
| DIVISION OF ELECTIONS, ) | |
| ) | |
| Defendants. ) | Case No. 3:10-cv-00252 RRB |
| ) | |

**MOTION TO DISMISS FOR LACK OF FEDERAL QUESTION JURISDICTION,
OR IN THE ALTERNATIVE TO ABSTAIN**

Defendants, Lieutenant Governor Craig Campbell and the State of Alaska, Division of Elections move to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of federal-question jurisdiction, or in the alternative for an order abstaining under the *Pullman* doctrine.

The plaintiff in this case has attempted to dress his state-law claims in federal-question clothing, in order to go forum-shopping. This Court should decline to

assert jurisdiction over a case that raises only state-law claims. The Alaska Court System is the proper forum for this case. The Alaska Supreme Court is very familiar with the state's election laws—issuing an election law decision as recently as two weeks ago—and is the appropriate court to interpret Alaska's election statutes.

Federal courts are courts of limited jurisdiction that possess only that power authorized by the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Subject matter jurisdiction cannot be waived and a federal court is under a continuing duty to dismiss an action whenever it appears the court lacks jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002). Federal Rule 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. When a defendant moves to dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of proof on the necessary jurisdictional facts because the plaintiff is the party invoking the court's jurisdiction. *See Kokkonen v. Guardian Life*, 511 U.S. at 377; *In re Ford Motor Co./ Citibank (South Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001).

The plaintiff in this case asserts federal court jurisdiction under 28 U.S.C.A. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." He has failed to assert any claims that arise under federal law, however.

I. **THE PLAINTIFF HAS FAILED TO ALLEGE A VIOLATION OF THE ELECTIONS CLAUSE OF THE UNITED STATES CONSTITUTION.**

The plaintiff first asserts that this court has federal-question jurisdiction because he states a claim under the Elections Clause of the U.S. Constitution, Article I, § 4, Cl. 1.  *See* Complaint, par. 4.  The Elections Clause provides that "(t)he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."  The plaintiff alleges that because this provision grants authority to the state legislature, "[d]efendants' attempt to effectively nullify various provisions of Alaska Stat. § 15.15.360 by establishing their own standards for counting write-in ballots therefore is unconstitutional."  *Id.*, par. 20.

The Division does not dispute that the Alaska Legislature has the power to prescribe "[t]he Times, Places and Manner of holding Elections for Senators" in accordance with the Elections Clause.  The Division has never claimed that it has the power to ignore, override, or alter the statutes the Alaska Legislature has enacted regarding elections.  In counting ballots in this election, the Division is proceeding under those statutes, and has interpreted those statutes where necessary.  The Division believes that its interpretations of those statutes are valid and legally supported.

The Alaska State Legislature has followed the mandate of the federal constitution by enacting laws that prescribe the "Times, Places, and Manner of holding Elections. . . ." Article I, § 4, Cl. 1.  One of these laws delegates authority to the Director of Elections to "provide general administrative supervision over the conduct of state

elections." Alaska Stat. § 15.15.010.  If, assuming for the sake of argument, the Director misinterprets a state statute in exercising this authority, then that would violate state law. But a state official's misinterpretation of a state statute cannot be bootstrapped into a violation of the constitutional provision that granted the legislature authority to enact the law, in order to create federal-question jurisdiction.

The question of whether the actions of state officials are consistent with the duly-enacted state statutes governing elections is not of central concern to the Elections Clause.  The Elections Clause does not transform every claim that a state agency has misinterpreted a state election statute into a federal constitutional claim.  If it did, every state election law dispute would implicate the U.S. Constitution, and the federal courts would find themselves the primary arbiters of state election law, despite the Constitution's clear delegation of authority to the states in that arena.

The plaintiff presumably has fashioned this argument as an analogy to the discussion of three Supreme Court justices about the actions of the Florida Supreme Court in *Bush v. Gore*, 531 US 98, 111 (2000) (Rehnquist, C.J., concurring.).  Chief Justice Rehnquist, joined by two other justices, stated that the Florida Supreme Court's decision to change the statutory requirements of how Presidential electors are appointed violated Article II, § 1, Cl. 2 of the U.S. Constitution, a provision that gives the legislature exclusive authority to direct how the state appoints electors. *Id.* at 112 – 113. Had a majority of the Court accepted this analysis, it would have been an additional ground to reverse the Florida Supreme Court in that case. *Id.* at 111.

The analogy does not extend to this case, however, to create federal-question jurisdiction. The plaintiff here argues—incorrectly—that the Division of Elections has failed to properly follow the legislature's statutes; he does not allege that the Division has <u>changed</u> a state law. And that would not be possible. While state officials would be required to follow the orders of their state Supreme Court regardless of how the officials might interpret the governing statutes themselves, state officials have no authority under state law to proceed without a court order in a manner contrary to a state statute. If they did, they arguably would violate—but not <u>change</u>—state law, and a citizen harmed by their actions would have a state-law claim and a remedy in state court. This is different than the situation posed by the Florida Supreme Court in *Bush v. Gore*, as a citizen harmed by a decision of the state supreme court that impermissibly changes the mandate of the legislature obviously has no state law remedy in state court. But it is only after a state supreme court has finally determined the requirements of the state statute that a federal question arises as to whether that judicial interpretation infringes on the legislature's authority and therefore violates the Elections Clause.

For this reason, the plaintiff's Elections Clause claim does not "arise under" federal law. *See* Article III, § 2. The federal law that plaintiff invokes for federal-question jurisdiction is not sufficiently central to the dispute to support such jurisdiction. The plaintiff's complaint that the Division's counting methods violate a state statute arises under state law, and its resolution will turn exclusively on questions of state law. Federal question jurisdiction in this case would threaten the legitimate interest of the state

in having state courts interpret state law, and could deprive the state courts of their authority to shape state law.

## II.   THE PLAINTIFF HAS FAILED TO ALLEGE A VIOLATION OF EQUAL PROTECTION.

The plaintiff also asserts federal-question jurisdiction by virtue of an Equal Protection claim.  *See* Complaint, par. 4.  The plaintiff fails to allege facts sufficient to support such a claim, however.

The plaintiff invokes the analysis of the Supreme Court in *Bush v. Gore*, 531 U.S. 98, in which the Court held that Florida election officials violated equal protection by counting ballots without specific standards to assure that a voter's intent was judged consistently from one ballot to the next.  The violation occurred because, when recount teams examined ballots cast by punchcard balloting machines that produced incompletely punched ballots, the standards they applied to accept or reject contested ballots varied "not only from county to county but indeed within a single county from one recount team to another."  *Id.* at 106.  The Court found that "one source of [the] fundamental nature [of the right to vote] lies in the equal weight accorded to each vote and the equal dignity owed to each voter," and held that "[h]aving once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another."  *Id.* at 104-105.  Thus, the *Bush v. Gore* equal protection analysis is founded on the fact that Florida's system for counting questionable ballots resulted in inconsistent interpretations of physically identical ballots

depending on what county the ballot was cast in or what recount team examined the ballot.

But the plaintiff has not alleged facts in this case that support this type of claim. In fact, the Division's process for handling questionable ballots—an explanation of which is attached as Exhibit A to the complaint and serves as the factual basis for the plaintiff's claims—unequivocally demonstrates that the facts of this case do not support an Equal Protection claim.

While the complaint asserts that "Defendants and their counting boards apparently will be attempting to divine for themselves the 'intent of the voter' based on vague, amorphous, subjective—and unspecified—criteria," *see* complaint, par. 24, that characterization of the process is incorrect. The plaintiff apparently has failed to read carefully the basis for this characterization, the written description of the process incorporated by reference into the complaint. The written procedures do not give counting teams any discretion to interpret the intent of a voter from a ballot that does not include a properly marked oval and a correctly spelled name. *See* Complaint, Exh. A, p.1. What the plaintiff refers to as "counting boards" will not actually review ballots to determine whether they will be counted; they will sort them into five box lids. The five categories of sorting are: (1) oval is marked correctly next to a candidate's name that is printed on the ballot; (2) no oval is marked for U.S. Senate, or more than one oval is marked for that race, or a name is written in but the oval is not marked; (3) oval is marked for write-in and the name written in is "Lisa Murkowski" or "Murkowski" and

spelled correctly and the ballot is not challenged; (4) oval is marked for write-in and the name written appears to be a variation or misspelling of Lisa Murkowski or Murkowski; this category also includes any ballot challenged by an observer in the sorting process; or (5) oval is marked for write-in and the name written in is not "Murkowski", "Lisa Murkowski" or a variation thereof. *Id.* These are the only judgment calls that the sorters—the Plaintiff's "counting boards"—will make, and these determinations will be based on the clearest of standards and subject to challenge by observers.

The Plaintiff's Equal Protection concern—that the sorters will count in an inconsistent manner ballots that misspell "Murkowski"—cannot occur. It will not occur because the sorters do not decide how ballots falling into this category should be counted. *See id.* Ballots that misspell "Murkowski" and therefore raise a question of whether similar ballots will be counted similarly all will be interpreted by one person, the Director of Elections. The Director will apply the same standards to each ballot and—because one person will make a determination for all ballots—will view all the iterations of voter's expressions of intent consistently.[1]  Moreover, if the candidates have any concern that

---

[1] This procedure does not create an equal protection problem under *Bush v. Gore* for another reason as well. Unlike the "hanging chads" created by Florida's voting machines, which led to only several variations of possible problem ballots, Alaska's voters can create a nearly limitless spectrum of variations of write-in votes, based on spelling and penmanship issues. The Supreme Court in *Bush v. Gore* considered that possibility, acknowledging that "in some cases the general command to ascertain intent is not susceptible to much further refinement." 531 U.S. at 106. Given the myriad ways in which questions about voter intent may arise in different situations, the Court deliberately stopped short of stating that specific guidelines for discerning voter intent must be articulated in every case.

any given decision on her part is inconsistent with an earlier call, they can challenge a particular ballot and then assert a violation of Equal Protection. *See* Exh. A, p.2 (describing the process for segregating challenged ballots after the Director's determination). The process that the Plaintiff has challenged here therefore does not "value one person's vote over that of another" and does not violate Equal Protection.

Because Mr. Miller has not established that his complaint raises any genuine federal question, the division asks this Court to dismiss this suit for lack of jurisdiction pursuant to F.R.C.P. 12(b)(1).

### III. ALTERNATIVELY, IF THE COURT FINDS THAT IT HAS FEDERAL-QUESTION JURISDICTION, IT SHOULD ABSTAIN AND PERMIT THE ALASKA STATE COURTS TO INTERPRET STATE LAW.

Even if the Court finds that it has jurisdiction to hear this case, it should abstain under *Railroad Commission v. Pullman Co.,* 312 U.S. 496 (1941).[2] *See, e.g., Burdick v. Takushi*, 846 F.2d 587, 588-89 (9th Cir. 1988) (abstaining under the *Pullman* abstention doctrine from considering the scope of a state's write-in voting law).

The *Pullman* abstention doctrine counsels that federal courts should postpone the exercise of jurisdiction "when a federal constitutional issue . . . might be

---

[2] In *Pullman*, a federal court was asked to restrain an order of the Texas Railroad Commission regarding the use of attendants in railroad sleeping cars. *Pullman,* 312 U.S. at 497-98. The lower court issued an injunction, and an appeal to the Supreme Court followed. *Id.* at 498. The Supreme Court noted that the Supreme Court of Texas would have the last word on whether the Commission had even acted within the scope of authority given to it by the laws of Texas. *Id.* at 499-500. It saw nothing to preclude an action which could be "brought with reasonable promptness, in the state court." *Id.* at 502. Thus, the Supreme Court determined that the federal courts should retain the action, but abstain while that state court process went forward.

mooted or presented in a different posture by a state court determination of pertinent state law." *C-Y Dev. Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir. 1983) (quotations omitted); *see also Wolfson v. Brammer,* 616 F.3d 1045, 1066 (9th Cir. 2010).

The doctrine is premised on the well accepted proposition that "the federal courts should not adjudicate the constitutionality of state enactments fairly open to interpretation until the state courts have been afforded a reasonable opportunity to pass on them." *Harrison v. NAACP,* 360 U.S. 167, 176 (1959). *Cf. Arizonans for Official English v. Arizona,* 520 U.S. 43, 79 (1997) ("Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court.").

Pullman abstention is designed to respect "the rightful independence of the state governments" and to enable "the smooth working of the federal judiciary." *Pullman,* 312 U.S. at 501. In short, the doctrine exists to avoid collision between federal courts and state legislatures and to prevent premature determination of constitutional issues. *See Porter v. Jones,* 319 F.3d 483, 492 (9th Cir. 2003); *San Remo Hotel v. City & County of San Francisco,* 145 F.3d 1095, 1101 (9th Cir. 1998) ("[O]ur precedents require abstention in order to avoid an unnecessary conflict between state law and the federal Constitution.").

In applying these principles, the Ninth Circuit has stated that *Pullman* abstention is appropriate when: "1) the federal plaintiff's complaint requires resolution

of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear." *San Remo Hotel,* 145 F.3d at 1104 (citing *Sinclair Oil v. County of Santa Barbara,* 96 F.3d 401, 409 (9th Cir. 1996)).[3]

Because all three factors are present in this case, this Court should abstain under *Pullman* and require that the plaintiff seek a definitive ruling in the state courts on the election law questions at issue in this litigation before returning to the federal forum.

### 1.    Resolution of Sensitive Questions of Federal Constitutional Law

It is undeniable that the complaint alleges two violations based on sensitive questions of federal constitutional law: whether Division's practice violates the Election Clause or equal protection. Resolution of these issues would hinge on this Court's interpretation of state law. If the Alaska Supreme Court were to determine that the Division's interpretation of state election law is incorrect and that the Division must

---

[3] In voting cases, the Ninth Circuit has added a threshold requirement: "before abstaining in voting cases, a district court must independently consider the effect that delay resulting from the abstention order will have on the plaintiff's right to vote. Although we are mindful of the important principles of federalism implicit in the doctrine of abstention, these principles may be outweighed in an individual case by the countervailing interest in ensuring each citizen's federal right to vote." *Badham v. U.S. District Court, N.D. California,* 721 F.2d 1170, 1173 (9th Cir. 1983). The Division satisfied the threshold requirement because there is no threat that any voter will be disenfranchised by the its vote counting methodology – there is simply no danger that any citizen's vote will be denied under the Division's interpretation of relevant state law. *See also Burdick v. Takushi,* 846 F.2d 587, 588-89 (9th Cir. 1988) (holding in a suit challenging constitutionality of Hawaii's election laws based on refusal of officials to permit write-in vote, *Pullman* abstention was appropriate pending state court determination as to whether those laws permitted write-in voting).

count ballots under the plaintiff's preferred interpretation of the state statutes, the plaintiff's federal claims would be mooted. When a federal constitutional issue might be mooted by a state court determination of pertinent state law, the state has satisfied the first prong. *See C -Y Dev. Co.,* 703 F.2d at 377-79; *Burdick,* 846 F.2d at 588.

Alternatively, the Ninth Circuit has also held that the first *Pullman* prong is satisfied in cases that involve a sensitive area of social policy best left to the states to address. *See Smelt v. County of Orange,* 447 F.3d 673, 679-81 (9th Cir. 2006); *see also In Eastport Assocs.*, 935 F.2d 1071, 1078 (9th Cir. 1991) ("[T]he predominance of particularly sensitive state law issues should weigh in favor of abstention.").

Here, the U.S. Constitution expressly delegates that the election of U.S. Senators "shall" be prescribed by the state "Legislature." U.S. Const. Art. I, § 4, cl. 1. "The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be exercised." *Lassiter v. Northamption County Board of Elections,* 360 U.S. 45, 50 (1959); *Pope v. Williams,* 193 U.S. 621, 633 (1904); *Mason v. Missouri,* 179 U.S. 328, 335 (1900).

For this reason, in a case involving the meaning of Hawaii's write-in laws, the Ninth Circuit held "that State election codes are the product of careful consideration at the local level about how to ensure fair and orderly elections. The authority of states to enact such codes derives from the Constitution itself. Federal courts should refrain from deciding the constitutionality of state election laws when reasonable alternatives to such adjudication are available." *Burdick*, 846 F.2d at 588-89.

In short, the state has satisfied the first prong because this litigation challenges the constitutionality of a state election procedure and the plaintiff has ample opportunity to challenge that procedure in state court.

2. **Avoidance of Constitutional Adjudication**

If the Alaska Supreme Court determines that the Division's interpretation of Alaska Statute § 15.15.360 is not supported by the law or violates the constitution, that would render unnecessary a decision by this Court on whether the challenged practice violates the federal Constitution. In such a situation, it is appropriate for this Court to abstain. *See Burdick*, 846 F.2d at 588-89.[4]

3. **Uncertain Resolution of State Law**

The eventual outcome of an Alaska Supreme Court decision on whether Division is properly interpreting Alaska Stat. § 15.15.010 and state election law is uncertain for abstention purposes. Resolution of an issue of state law may be uncertain

---

[4] *See also Reetz v. Bozanich,* 397 U.S. 82, 86-87 (1970) (finding the district court should have abstained when a state court ruling on a state statute "could conceivably avoid any decision" under the federal Constitution; the Court held the "instant case is the classic case in that tradition, for here the nub of the whole controversy may be the state constitution. The constitutional provisions relate to fish resources, an asset unique in its abundance in Alaska. The statute and regulations relate to that same unique resource, the management of which is a matter of great state concern. We appreciate why the District Court felt concern over the effect of further delay on these plaintiffs, the appellees here; but we have concluded that the first judicial application of these constitutional provisions should properly be by an Alaska court."); *San Remo Hotel,* 145 F.3d at 1105 (reversing district court's refusal to abstain when a state court's decision on the meaning of municipal zoning laws would moot the federal constitutional claim); *Columbia Basin Apartment Ass'n v. City of Pasco,* 268 F.3d 791, 802 (9th Cir. 2001) ("[I]nterpretation of the validity of [a city ordinance] . . . may eliminate the need to determine whether it also violates the federal Constitution.").

when "the question is novel and of sufficient importance that it ought to be addressed first by a state court." *Pearl Inv. Co. v. City & County of San Francisco,* 774 F.2d 1460, 1465 (9th Cir. 1985)*; see also Columbia Basin Apartment Ass'n,* 268 F.3d at 806 (stating uncertainty exists when the law at issue has not been interpreted by a state court).

Here, the state statutory provision at the heart of this litigation, AS 15.15.360, has not yet been considered by the Alaska Supreme Court in the context of write-in votes. Although the State believes the issue is straightforward and that Alaska law supports the Division's interpretation of the statute,[5] a conflict exists between the parties on the meaning of this statute. This conflict, since it centers on the meaning of state statute, weighs heavily in favor of abstention. *See Burdick*, 846 F.2d at 588-89.[6]

---

[5] Alaska Statute 15.15.360 provides basic guidance for the counting of ballots, establishing the kind of marks that count as valid votes as well as some parameters for counting write-in votes. A write-in vote "shall be counted if the oval is filled in for that candidate and if the name, as it appears on the write-in declaration of candidacy, of the candidate or the last name of the candidate is written in the space provided." AS 15.15.360(a)(11). Alaska Statute 15.15.360(b) specifically states that: "The rules set out in this section are mandatory and there are no exceptions to them. A ballot may not be counted unless marked in compliance with these rules." The statute is silent regarding spelling and handwriting issues. Despite the lack of specific direction to election officials to consider voter intent, the statutory structure and Alaska Supreme Court case law recognize that the purpose of ballot review is to determine whether a ballot reveals the intent of the voter. *See, e.g., Edgmon v.* Moses, 152 P.3d 1154, 1158 (Alaska 2007); *Fischer v. Stout*, 741 P.2d 217, 220 (Alaska 1987) ("In each of these challenges we must examine the ballot to determine whether the voter's intent can be adequately identified.").

[6] *See generally Moore v. Hosemann*, 591 F.3d 741, 745-46 (5th Cir. 2009) (*Pullman* abstention from Presidential candidate's suit challenging Mississippi's Secretary of State's enforcement of 5:00 p.m. deadline for filing qualifying papers was appropriate; existence of federal constitutional question was entirely contingent on

Indeed, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. By abstaining in such cases, federal courts will avoid both unnecessary adjudication of federal questions and 'needless friction with state policies.'" *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 236 (1984) (quoting *Pullman,* 312 U.S. at 500).

For the reasons stated above, the Court should dismiss this case without prejudice to refile it in state court.

DATED:  November 10, 2010.

        DANIEL S. SULLIVAN
        ATTORNEY GENERAL

By:   /s/ Margaret Paton Walsh
      Assistant Attorney General
      Alaska Bar No. 0411074
      Margaret.paton-walsh@alaska.gov
      LSA_ECF@alaska.gov

---

unresolved interpretation of Mississippi law); *Reed v. Board of Election Com'rs of City of Cambridge*, 459 F.2d 121 (1st Cir. 1972) (where there were no state cases which would guide federal court in determining what tests in deciding whether to register individual students, federal court should abstain from decision on merits of students' suit for injunctive and declaratory relief). *Cf. Lueck v. Nevada Judicial Ethics and Election Practices Commission*, 106 Fed.Appx. 552 (9th Cir. 2004) (unpublished decision) (*Pullman* abstention was warranted in judicial candidate's action challenging validity of state judicial ethics committee's advisory opinion regarding his campaign tactics, where issue of whether committee's factual findings were binding on further disciplinary hearings presented question of state law, and issue had not been addressed by state supreme court.).

**Certificate of Service**

The undersigned hereby certifies that on the 10th day of November, 2010, a true and correct copy of the above document, Motion to Dismiss for Lack of Federal Question Jurisdiction, was served via electronic mail on the following:

-Thomas Van Flein, Esq.


By:   /s/  Margaret Paton-Walsh