IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOE MILLER,<br><br>        Plaintiff,<br><br>vs.<br><br>LIEUTENANT GOVERNOR MEAD TREADWELL, in his official capacity; and the STATE OF ALASKA, DIVISION OF ELECTIONS,<br><br>        Defendants. | Case No. 3:10-cv-0252-RRB<br><br><br>**ORDER LIFTING STAY,<br>RESOLVING PENDING MOTIONS,<br>AND DISMISSING CASE** |

The Complaint for Injunctive and Declaratory Relief was filed in this matter on November 9, 2010.[1] An Amended Complaint was filed on November 19, 2010, adding a third federal claim.[2] On December 27, 2010, Plaintiff moved to file a substitute Amended Complaint, which was in significant part identical to the prior Amended Complaint.[3] The Court notes that the substitute Amended Complaint contains primarily housekeeping changes. Although

---

[1]    Docket 1.

[2]    Docket 40.

[3]    Docket 80.

Defendants were not able to file an Answer to the Amended Complaint due to the stay in this matter and subsequent time constraints, the Court accepts the Amended Complaint as properly filed.

On November 19, 2010, this Court issued an order abstaining from consideration of the questions of state law and referring the parties to the appropriate state tribunal pursuant to *Pullman* abstention.[4] A district court abstaining under *Pullman* must dismiss the state law claims and stay its proceedings on the constitutional questions until a state court has resolved the state issues.[5] *Pullman* allows postponement of the exercise of federal jurisdiction when a federal constitutional issue might become moot or be presented in a different posture following a state court determination of pertinent state law.[6] This Court found that *Pullman* abstention was appropriate because 1) The complaint involved a "sensitive area of social policy" that was best left to the state to address;[7] 2) a definitive ruling on the state issues

---

[4]     *See Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941).

[5]     *Cedar Shake and Shingle Bureau v. City of Los Angeles*, 997 F.2d 620, 622 (9th Cir. 1993).

[6]     *Id.*

[7]     See *Burdick v. Takushi*, 846 F.2d 587, 589 (9th Cir. 1988) (holding that state election laws qualify as "a sensitive area of social policy.").

ORDER LIFTING STAY, RESOLVING PENDING
    MOTIONS, AND DISMISSING CASE - 2
3:10-cv-0252-RRB

by a state court could obviate the need for constitutional adjudication by the federal court;[8] and 3) the proper resolution of the potentially determinative state law issue was uncertain.[9]

This Court retained jurisdiction to review any remaining constitutional issues once the state remedies had been exhausted. In order to ensure that serious state law issues were resolved prior to certification of the election, the Court enjoined certification of the election, ordering that the election should not be certified until the legal issues had been fully and finally resolved.[10]

On December 10, 2010, Superior Court Judge William Carey issued a 34 page order disposing of the issues that arose under state law and ruling in favor of Defendants.[11] Working on an expedited briefing schedule, the Alaska Supreme Court considered Plaintiff's appeal and held oral argument on December 17, 2010. In

---

[8]     A definitive ruling by the state court in Plaintiff's favor would eliminate the need for this Court to consider Plaintiff's constitutional arguments.

[9]     Similar to *Burdick*, "Neither the plain language of [state] statutes nor any definitive judicial interpretation of those statutes establishes the [state legislature's intent with respect to counting write-in ballots]." *See* 846 F.2d at 588.

[10]     Docket 39.

[11]     See Docket 62.

a lengthy opinion, the Alaska Supreme Court upheld Judge Carey's Order.

The state issues having been fully adjudicated, this Court allowed briefing by the parties regarding the federal questions remaining before it. Plaintiff has filed a document entitled Motion for Partial Summary Judgment regarding Counts 1 and 2.[12] The State has filed a document entitled Opposition to Miller's Motion to Modify Preliminary Injunction[13] and a motion to expedite lifting the stay in this matter,[14] but has yet to specifically respond to Plaintiff's Motion for Summary Judgment. Given the Court's conclusions below, no further responses are required. The Court now enters the following order.

## I.    THE ELECTIONS CLAUSE (COUNT ONE)[15]

Plaintiff alleges in his Complaint that Defendants overrode state law by establishing a policy whereby write-in ballots with misspellings could be counted.  He argues that this act violates

---

[12]    Docket 82.

[13]    Docket 84.

[14]    Docket 85.

[15]    The Court observes that Counts one, two and three are virtually identical in both the Amended Complaint and the Substitute Amended Complaint.  References in this order are to the Amended Complaint at Docket 40.

ORDER LIFTING STAY, RESOLVING PENDING
    MOTIONS, AND DISMISSING CASE - 4
3:10-cv-0252-RRB

the Elections Clause of the U.S. Constitution, which provides "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof."[16] Specifically, Miller complains that the process for counting the write-in ballots, as established by the Division of Elections in response to a large number of write-in ballots being cast, is unconstitutional because it does not comply with Miller's interpretation of the language of A.S. § 15.15.360(a)(11), which requires election officials to count a write-in ballot only if the candidate's name is written on the ballot "as it appears on the write-in declaration of candidacy." According to Miller's interpretation, any misspellings would not fulfill this criteria.

The Alaska Supreme Court disagreed with Miller's interpretation of the statutory language and concluded that Miller's interpretation of the statute "would erode the integrity of the election system," holding that "voter intent is paramount."[17]

The Court is not persuaded by Plaintiff's current argument, that the Alaska Supreme Court "effectively amend[ed] the clear

---

[16]     U.S. Const., Art. I, § 4, cl. 1.

[17]     *Miller v. Treadwell*, No. S-14112, (Alaska December 22, 2010).

ORDER LIFTING STAY, RESOLVING PENDING
   MOTIONS, AND DISMISSING CASE - 5
3:10-cv-0252-RRB

rules that the Alaska Legislature set forth regarding the 'manner' in which U.S. Senate elections must be conducted, by allowing misspelled write-in ballots to be accepted as valid, and counted, in clear violation of State law."[18]

Miller argues that "Federal courts have an independent obligation to interpret for themselves the actual meaning of a state legislature's enactments, without the usual deference to the State's administrative or judicial interpretations of them."[19] While this may be true if the interpretation given is "contrary to 'the face' of the statute and [contrary to] the State's past practice,"[20] the Alaska Supreme Court did not make a finding clearly contrary to the face of the statute and its findings were entirely consistent with the State's past practice of making voter intent a priority.  This is not to say that Miller's technical arguments are frivolous, for it is easy to understand his view as to the proper interpretation of A.S. § 15.15.360(a)(11). But it is just as easy to accept the interpretation given by the Alaska Supreme Court. What we have before us is a poorly drafted state statute.  Wisdom would suggest that the Alaska Legislature act to clarify it to

---

[18]    Docket 82 at 6.

[19]    Docket 82 at 9.

[20]    *Roe v. Alabama*, 68 F.3d 404,406-07 (11th Cir. 1995).

avoid similar disputes in the future.  For now we have to work with

what we have and that is what the Alaska Supreme Court has done.

Generally speaking, the Alaska Supreme Court is the final

expositor of Alaska law.[21] That must be the case here. It concluded

that Miller's interpretation of the statute "would erode the

integrity of the election system," and held that "voter intent is

paramount."  Under the facts presented, this Court declines to

second-guess the highest Court of the state.

Moreover, this Court notes that when an election involves a

"write-in" vote, human discretion on some level is inevitably

required.  Although Plaintiff describes the counting process used

by the Division of Elections in this case as "vague, amorphous, and

subjective,"[22] the fact remains that *some process* was necessary in

order to tabulate write-in ballots in this election. Write-in

ballots cannot be properly evaluated by a computer. The Division of

Elections formulated a methodology for counting the ballots and the

---

[21]     *See Hortonville Joint Sch. Dist. No. 1 v. Hortonville Ed. Assn.,* 426 U.S. 482, 488 (1976) ("We are, of course, bound to accept the interpretation of [the State's] law by the highest court of the State."); *Stringer v. Black*, 503 U.S. 222, 234 (1992) (noting that the state supreme court is the final authority on the meaning of state law).

[22]     Docket 40 at 17.

ORDER LIFTING STAY, RESOLVING PENDING
   MOTIONS, AND DISMISSING CASE - 7
3:10-cv-0252-RRB

Alaska Supreme Court has concluded that it was accomplished within the law.

The process for counting the write-in ballots is constitutional under the Elections Clause, because it complies with the Alaska Supreme Court's interpretation of the relevant statutory language.  Therefore, Plaintiff's claim under the Elections Clause fails.

## II.  THE EQUAL PROTECTION CLAUSE (COUNT TWO - VOTER INTENT STANDARD)

Plaintiff further alleges in his Amended Complaint that the Equal Protection Clause requires state officials to establish "specific standards" and "uniform rules" in order to prevent "the standards for accepting or rejecting contested ballots to vary within a single county from one count team to another."[23]  In support, Plaintiff relies on *Bush v. Gore*.[24]  The question before the Supreme Court in *Bush* was: "whether the recount procedures the Florida Supreme Court has adopted [were] consistent with its obligation to avoid arbitrary and disparate treatment of the members of its electorate."[25]

---

[23]    Docket 40 at 12.

[24]    531 U.S. 98 (2000).

[25]    531 U.S. at 105.

ORDER LIFTING STAY, RESOLVING PENDING
   MOTIONS, AND DISMISSING CASE - 8
3:10-cv-0252-RRB

Miller acknowledges that the Alaska Supreme Court has previously determined in voting cases that determining the intent of the voter is the core principal underlying ballot review.[26] Miller argues, however, that this is insufficient. He alleges that the Defendants' attempt to determine the "intent of the voter" was based on "vague, amorphous, subjective - and unspecified - criteria," and that "this quixotic quest will result in the arbitrary and disparate treatment of write-in ballots in clear violation of the U.S. Constitution."[27]

The factual situation in this case differs significantly from that in *Bush*. First, the write-in ballots in this case were counted and tabulated by a single state-wide election board and the determination of challenged ballots was made by a single individual, the Director.[28] Second, although the determination of whether to count the vote is subject to a certain degree of

---

[26]    *See, e.g., Edgmon v.* Moses, 152 P.3d 1154, 1158 (Alaska 2007); *Fischer v. Stout*, 741 P.2d 217, 220 (Alaska 1987) ("In each of these challenges we must examine the ballot to determine whether the voter's intent can be adequately identified.").

[27]    Docket 40 at 12.

[28]    Although there were multiple teams counting ballots, the procedure specifically provided that challenged ballots were to be reviewed by a single person, the Director.  Thus, Miller's argument in his motion for a preliminary injunction that one table might accept "Moochiski," but another reject it, is frivolous.

ORDER LIFTING STAY, RESOLVING PENDING
    MOTIONS, AND DISMISSING CASE - 9
3:10-cv-0252-RRB

subjectivity, the standard itself is uniform across the board.
Thus, there is little, if any, likelihood that one voter's vote
would be counted and another's vote, with the identical
characteristics, would be rejected.  As was noted in *Bush*, the
concern is whether the decision is arbitrary and capricious.

Miller argues that "[d]ivining the intent of the voter who
casts an ambiguous write-in vote is just as subjective, and
constitutionally offensive, as divining the intent of a voter by
scrutinizing a dimpled chad."[29]  The Court disagrees. The United
States Supreme Court specifically addressed "the intent of the
voter" in *Bush*, and noted:

> The law does not refrain from searching for the intent of
> the actor in a multitude of circumstances; and in some
> cases the general command to ascertain intent is not
> susceptible to much further refinement.   In this
> instance, however, the question is not whether to believe
> a witness but how to interpret the marks or holes or
> scratches on an inanimate object, a piece of cardboard or
> paper, which, it is said, might not have registered as a
> vote during the machine count. The factfinder confronts
> a thing, not a person.  The search for intent can be
> confined by specific rules designed to ensure uniform
> treatment.[30]

---

[29]     Docket 13 at 19.

[30]     531 U.S. at 106.

ORDER LIFTING STAY, RESOLVING PENDING
   MOTIONS, AND DISMISSING CASE - 10
3:10-cv-0252-RRB

In *Bush*, "[t]he want of those rules here has led to unequal evaluation of ballots in various respects."[31] This case presents a different scenario. The evaluation of handwritten ballots is markedly different from "divining the intent of a voter by scrutinizing a dimpled chad" or "interpret[ing] the marks or holes or scratches on an inanimate object." The very nature of a "write-in" vote pre-supposes a requirement that *someone* will have to read the handwriting and determine for whom the vote was cast. Under the circumstances presented, the Court cannot find the procedures followed by Defendants to have been unreasonable. Miller's challenge fails.

## III. THE EQUAL PROTECTION CLAUSE (COUNT THREE – DISCRIMINARY POLICY REGARDING "REJECTED" BALLOTS)

Miller's third federal claim (which he has not briefed in the most current briefing) alleges that Defendants arbitrarily established two disparate standards for determining whether a person whose vote in the election had been rejected by an automated tally machine could have their vote counted.[32] Specifically, he complains that if a voter voted for a pre-printed name on the ballot (for practical purposes here, a vote for "Miller"), and if

---

[31]     *Id.*

[32]     Docket 40 at 13.

ORDER LIFTING STAY, RESOLVING PENDING
    MOTIONS, AND DISMISSING CASE - 11
3:10-cv-0252-RRB

the automated tally machine rejected the ballot, the vote was not counted. In contrast, if a voter voted for a write-in candidate, and if the automated tally machine rejected the ballot, the vote was still reviewed by Division personnel or the Director. Miller complains that these disparate policies discriminate against the candidates whose names were pre-printed on the ballot, as well as people who unsuccessfully attempted to cast their votes for such candidates, and such arbitrary and disparate treatment constitutes unlawful discrimination in violation of the Equal Protection Clause.[33]

Plaintiff made a similar argument under state law, which was addressed by the Superior Court Judge and by the Alaska Supreme Court. Judge Carey noted that the record reflects that division workers did actually review every ballot, not just write-in ballots, in the counting process, examining the ovals and making individual determinations of the so-called "undervote, overvote" ballots (those ballots which were rejected by the tally machines for either having too many ovals filled in or no oval filled in). *See* Carey Order at 19. The Alaska Supreme Court carefully examined the record and concluded that "the record does not support Miller's contention that ballots . . . were treated differently depending on

---

[33]     Docket 40 at 14.

whether they were cast for candidates whose names were pre-printed on the ballot."[34]  Accordingly, there appears to be no factual basis for this cause of action.

Nevertheless, it is worth noting that the Eleventh Circuit has convincingly held that "manual recounts in some counties, while identical ballots in other counties are counted and recounted only by machine, and the inevitable variances that this will produce, do not in themselves severely burden the right to vote."[35]  Also:

> [T]he additional scrutiny of ballots afforded under [the State's] manual recount procedures does not weigh the value of votes; it merely verifies the count. Unlike the . . . cases which have held that the systematic unequal weighting of votes is unconstitutional, here there is no automatic, inevitable, or systematic granting of greater weight to the choices of any voter or class of voters."[36]

In short, "[n]o court has held that the mere use of different methods of counting ballots constitutes an equal protection violation."[37] This Court finds that even if the record reflected only a machine count of Miller's votes and a hand-count of write-in

---

[34]     *Miller v. Treadwell* at * 12.

[35]     *Siegel v. LePore*, 234 F.3d 1163, 1185 (11th Cir. 2000).

[36]     *Id.* at 1185.

[37]     *Id.* at 1182.

ORDER LIFTING STAY, RESOLVING PENDING
    MOTIONS, AND DISMISSING CASE - 13
3:10-cv-0252-RRB

votes, it is not an action that rises to the level of an Equal Protection violation.

**IV.  CONCLUSION**

To the extent that Docket 79, Miller's Consent to Modification to Allow Certification, seeks further relief from this Court, **Docket 79 is DENIED as moot.**

The Motion to Amend the Complaint at **Docket 80 is GRANTED**, the Court having found that the changes made by Plaintiff are *de minimis.*

The Motion for Partial Summary Judgment at **Docket 81 is DENIED** for the reasons discussed herein.

The Motion to Expedite at **Docket 85 is GRANTED.**

In light of the foregoing, the federal claims in Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**.  The injunction is lifted and the Division of Elections may certify the election results immediately.  This matter is **DISMISSED.**

**IT IS SO ORDERED.**

ENTERED this 28th day of December, 2010.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

Case 3:10-cv-00252-RRB   Document 88   Filed 12/28/10   Page 14 of 14